**KIRTLAND & PACKARD LLP**
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
1638 South Pacific Coast Highway
Redondo Beach, California 90277
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

**MIGLIACCIO & RATHOD LLP**
Nicholas Migliaccio, *pro hac vice* anticipated
Jason Rathod, *pro hac vice* anticipated
Esfand Nafisi (State Bar No. 320119)
412 H St. NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRALDISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| B.M. THROUGH HER MOTHER ASHLEY SCOTT, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE NO.: |
| | **COMPLAINT FOR:** |
| PLAINTIFFS | 1. <u>INTRUSION UPON SECLUSION</u> |
| V. | |
| MUSICAL.LY, A CORPORATION; MUSICAL.LY, INC., A CORPORATION; AND BEIJING BYTEDANCE TECHNOLOGY CO LTD., A PRIVATELY HELD COMPANY, | **Jury Trial Demanded** |
| DEFENDANTS | |

CLASS ACTION COMPLAINT

1

1.     B.M., a minor, by her mother and natural guardian Ashley Scott ("Plaintiff"), hereby bringsthis Class Action Complaint against Defendants Musical.ly, Musical.ly, Inc. and ByteDance Technology Co. Ltd. (each a "Defendant" and collectively the "Defendants"), on behalf of herselfand those similarly situated, for intrusion upon seclusion. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

## I.     INTRODUCTION

2.     This case arises out of Defendants' use of its video-sharing social media application Musical.ly, and its successor application TikTok, to gather and publish the personal information of children under the age of 13 without receiving consent from or providing notice to the children's parents prior to the gathering and publication of such information, in direct violation of the federal Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501 - 6506. Plaintiff brings claims to obtain an injunction to cease these practices, sequester illegally obtained information, and for damages.

## II.    PARTIES

### A.     Plaintiff

3.     Plaintiff B.M. and her mother and natural guardianAshley Scott are, and at all times relevant were, individuals and residents of Florissant, Missouri. B.M. was under the age of 13 while using the media applicationMusical.ly and its successor applicationTikTok (collectively, the "App").

### B.     Defendants

4.     Defendant Musical.ly is a Cayman Islands corporation, with its principal place of business in Shanghai, China.

5.     Defendant Musical.ly, Inc. is a California corporation with its principal place of business in Santa Monica, California, and is a wholly owned subsidiary of Musical.ly.

CLASS ACTION COMPLAINT

6.     Defendant Beijing ByteDance Technology Co Ltd. ("ByteDance") is a privately held company headquartered in Beijing, China.  ByteDance acquired Defendant Musical.ly, Inc. in December 2017.

## III.    JURISDICTION, VENUE AND GOVERNING LAW

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, they engaged in and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed themselves of the laws of the United States.

9.     In accordance with 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in or emanated from this District, Defendants transact business in this District, and Defendant Musical.ly, Inc. resides in this District.

10.     Defendants' conduct giving rise to this action occurred in the State of California and therefore, pursuant to the doctrine of *lex loci delicti*, the laws of the State of California govern this action.

## IV.    BACKGROUND ON DEFENDANTS' BUSINESS PRACTICES

11.     Defendant Musical.ly, Inc. launched thesocial networking app Musical.ly in August 2014.Musical.ly allowed enabled users to create short video clips set to music and share them with other users of the app.  By the end of May

CLASS ACTION COMPLAINT

2017, Musical.ly had over 200 million users worldwide.[1]

12.    Defendant ByteDancelaunched a similar app called Douyin for the Chinese market in September 2016.  ByteDance introduced an English language version of Douyin to the international market in September 2017 under the name TikTok.

13.    On November 9, 2017, ByteDance acquired Musical.ly, Inc. for a price reported to be between $800 million and $1 billion.[2]

14.    In August 2018, ByteDance merged the Musical.ly appand TikTok app, consolidating all existing accounts and data into a single app that retained the name TikTok.

15.    The Musical.ly app was, and the TikTok App is, free to download from Apple's App Store, Google Play, and the Amazon Appstore.  Both apps generate revenue for Defendants through various means, including in-app purchases.

16.    The app analytics company Sensor Tower recently announced that, to date,there have been more than 1 billion installs of TikTok worldwide (not including Android users in China), with more than 96 million installs in the United States.[3]

17.    To register for the app, users provide their email address, phone number, username, first and last name, short bio, and a profile picture. Between December 2015 and October 2016, Defendants also collected geolocation information from users of the App.

18.    Many users choose to include their age or school name, which will

---

[1] https://www.billboard.com/articles/business/7776302/musically-apple-music-partnership (last visited March 24, 2019).

[2] https://www.businessinsider.com/social-video-app-musically-acquired-for-up-to-1-billion-2017-11?r=UK (last visited on March 24, 2019).

[3] https://sensortower.com/blog/tiktok-downloads-one-billion (last visited on March 24, 2019).

CLASS ACTION COMPLAINT

often be an indicator of the user's age, in their short bio, which is part of their App profiles. Since July 2017, Defendants request age information from new users during the registration process for an App account and prevent users who indicate that they are under the age of 13 from creating accounts. Prior to February 27, 2019, Defendants did not request age information to verify the age of existing users.

19.     The App provides a platform for users to create videos and then synchronize them with music or audio clips from either the App's online music library or music stored on the user's device. The App's online library has millions of song tracks, including songs from popular children's movies and songs popular among tweens and younger children. The Musical.ly App offers simple tools to create and edit videos. Once the video is completed, the user has the option to name the video with a title before posting and sharing the video publicly.

20.     In addition to creating and sharing videos, the App provides a platform for users to connect and interact with other users. Users can comment on the videos of other users and have the option to "follow" other users' accounts so that they can view more of their videos in the future. Popular users can have millions of "fans" following their accounts. A user's account is set to public by default, which means that a user's profile bio, username, profile picture, and videos are public and searchable by other users. Users have the option to set their accounts to "private" so that only approved followers can view their videos; however, users' profiles, including usernames, profile pictures, and bios, remain public and searchable by other users.

21.     The App also allows users to send direct messages to communicate with other users. These direct messages can include colorful and bright emoji characters ranging from animals, smiley faces, cars, trucks, and hearts, among many others. By default, an App user can direct message any other user. Indeed,

CLASS ACTION COMPLAINT

there have been many public reports of adults trying to contact kids via the App. Until October 2016, the App had a feature where a user could tap on the "my city" tab, which provided the user with a list of other users within a 50-mile radius, and with whom the user could connect and interact with by following the user or sending direct messages.

22.    A significant percentage of the App's users are children under 13 years of age, and numerous press articles have highlighted the popularity of the App among tweens and younger children.[4]

23.    Defendants were aware that children were using the App. As of at least October 2016, on Defendants' websites, available at www.musicallyapp.tumblr.com and www.musical.ly/en-US, Defendants have provided parents guidance about their child's use of the App. Until April 2017, the webpage stated, for example, "If you have a young child on Musical.ly, please be sure to monitor their activity on the App."

24.    As early as 2016, Musical.ly, Inc. was aware that adult predators were using the App to target children.[5]

25.    The App does not provide a function for users to close their accounts, and instead requires users to send an email to Defendants to close their accounts. Defendants received thousands of complaints from parents that their child under 13 years old had created a Musical.ly App account without their knowledge. For example, in the two-week period between September 15, 2016, and September 30, 2016, Defendants received more than 300 complaints from parents asking to have their child's account closed. While Defendants closed the accounts, they did not delete the users' videos or profile information from

---

[4] *See, e.g.,* https://www.garyvaynerchuk.com/millions-of-tweens-using-musically-app/ (last visited March 24, 2019).

[5] https://www.thedenverchannel.com/money/science-and-tech/predators-are-using-musically-app-to-target-young-kids (last visited on March 24, 2019).

CLASS ACTION COMPLAINT

Defendants' servers.

26.     In December 2016, a third party publicly alleged in an interview with the co-founder of Musical.ly, Inc. that seven users whose accounts were among the most popular in terms of followers appeared to be children under 13 years of age. Shortly thereafter, Defendants then reviewed its most popular users and determined an additional 39 appeared to be under 13. In February 2017, Defendants sent messages to these 46 users' email addresses telling users under 13 years of age to edit their profile description to indicate that a parent or adult talent manager was running their accounts. Defendants did not take any steps to ensure that the person who was responding to the request was a parent and not the child user.

27.     Research by the U.K.-based National Society for the Prevention of Cruelty to Children ("NSPCC") found that TikTok is being used as a "hunting ground" by abusers seeking child victims.  The NSPCC surveyed 20,000 school-aged TikTok users.  They found that 25% of the respondents had used the app to live stream with a stranger and that one child in 20 had been asked to take off their clothes either during the live stream or in comments to a video.[6]

28.     On February 27, 2019, the Federal Trade Commission ("FTC") filed a complaint in the U.S. District Court for the Central District of California alleging that Defendants had violated COPPA by using the App to illegally collect the personal information of children under 13 without parental consent or notification.*See United States v. Musical.ly*, Case No. 2:19-cv-01439).[7]

29.     On the same date, Defendant ByteDance agreed to a $5.7 million settlement with the FTC, the largest civil penalty the FTC has ever collected in

---

[6]http://www.wave3.com/2019/02/26/new-study-says-livestreaming-app-poses-danger-children/ (last visited on March 22, 2019).

[7]The complaint in that matter served as a basis for many of the factual allegations asserted herein.

CLASS ACTION COMPLAINT

the name of child privacy.

**V.     COPPA REQUIRES VERIFIABLE PARENTAL CONSENT**

30.     Recognizing the vulnerability of children in the internet age, in 1999, Congress enacted COPPA. See 15 U.S.C. §§ 6501–6506. COPPA's express goal is to protect children's privacy while they are connected to the internet.

31.     Under COPPA, developers of child-focused apps, and any third parties working with these app developers cannot lawfully obtain the personal information of children under 13 years of age without first obtaining verifiable consent from their parents.

32.     COPPA applies to any operator of a commercial website or online service (including an app) that is directed to children and that: (a) collects, uses, and/or discloses personal information from children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personal information is "collected or maintained on behalf of an operator when … [t]he operator benefits by allowing another person to collect personal information directly from users of an online service. 16 C.F.R. § 312.2. In addition, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children.

33.     COPPA's broad definition of "personal information" is as follows: "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to

CLASS ACTION COMPLAINT

recognize a user over time and across different Web sites or online services" (including but not limited to "a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier"); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

34.    In order to lawfully collect, use, or disclose personal information, COPPA requires that an operator meet specific requirements, including each of the following:

      i.  Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

      ii.  Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

      iii.  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children.

35.    Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child. . . [r]eceives notice of the operator's personal information collection, use, and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personal information." 16 C.F.R. § 312.2.

CLASS ACTION COMPLAINT

36.     The FTC recently clarified acceptable methods for obtaining verifiable parental consent, which include: (i) providing a consent form for parents to sign and return; (ii) requiring the use of a credit card/online payment that provides notification of each transaction; (iii) connecting to trained personnel via video conference; (iv) calling a staffed toll-free number; (v) emailing the parent soliciting a response email plus requesting follow-up information from the parent; (vi) asking knowledge-based questions; or (vii) verifying a photo ID from the parent compared to a second photo using facial recognition technology.[8]

## V.     DEFENDANTS' MEDIA APP IS DIRECTED AT CHILDREN

37.     The COPPA Rule applies to operators of websites and online services directed to children that collect personal information, or those with actual knowledge they have collected personal information from children under 13 years of age. As explained further below, Defendants operate an online service directed to children because they target children as one audience and had actual knowledge that they had collected personal information from children under 13. Through the Musical.ly App, Defendants collected personal information as defined in the COPPA Rule, including first and last name; online contact information; the content of direct messages between users; photos and videos containing a child's image and voice, and, for some period of time, geolocation information.

38.     Pursuant to Section 312.2 of the COPPA Rule, the determination of whether an online service is directed to children depends on various factors, including its subject matter, visual content, music or other audio content, the presence of child celebrities or celebrities who appeal to children, and any

---

[8] See https://www.ftc.gov/tips-advice/business-center/guidance/childrens-online-privacy-protection-rule-six-step-compliance (last visited March 24, 2019).

CLASS ACTION COMPLAINT

competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience. A review of these factors demonstrates that the App is directed to children, by targeting children as one audience.

39.    The App's purpose is to create short videos lip-syncing to music and share these videos with other users, which is an activity that has tremendous appeal to children. The App features music by celebrities appealing to children.

40.    The App includes song folders to help users select songs for their videos. At various times material to this Complaint, the App has included song folders appealing to children, such as "Disney" and "school." The Disney folder included songs related to Disney television shows and movies, such as "Can You Feel the Love Tonight" from the Disney movie "The Lion King" and "You've Got a Friend in Me" from the Disney movie "Toy Story." The school folder contained songs covering school-related subjects or school-themed television shows or movies. The App's simple tools make it easy for children to create and upload videos. The App allows users to send other users colorful emojis, such as cute animals and smiley faces. Moreover, a large percentage of Musical.ly App users are under the age of 13. Indeed, many users self-identify as under 13 in their profile bios or provide school information indicating an age under 13. Many musicians and entertainers popular with tweens, such as Katy Perry, Selena Gomez, Ariana Grande, Meghan Trainor, among many others, have Musical.ly App accounts. The artists often encourage their fans to post and share videos of themselves dancing or lip-syncing to their new releases.

41.    Defendants also had actual knowledge they were collecting personal information from children, as described in Paragraph 26. The youth of the user base is easily apparent in perusing users' profile pictures and in reviewing users' profiles, many of which explicitly note the child's age, birthdate, or school. Since at least 2014, Defendants have received thousands of complaints from parents of

CLASS ACTION COMPLAINT

children under the age of 13 who were registered users of Defendants' online service. In just a two-week period in September 2016, Defendants received over 300 complaints from parents asking that their child's account be deleted.

42.     Defendants are operators of an online service directed to children by targeting children as one audience and had actual knowledge they had collected personal information from children.

## VI.     DEFENDANTS ARE OPERATORS UNDER COPPA

43.     Each Defendant is an "operator" pursuant to COPPA. Specifically, COPPA defines an "operator," in pertinent part, as:

> any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation.

16 C.F.R. § 312.2.

44.     Defendants operate App entirely online. Indeed, without a connection to the internet, Plaintiff and the Multi-State Class members could not have downloaded the App.

CLASS ACTION COMPLAINT

## VI.   DEFENDANTS FAILED TO OBTAIN VERIFIABLE PARENTAL CONSENT

45.   Defendants collected, used, or disclosed the personal information of Plaintiff's child without notifying her parents.

46.   Plaintiff never knew that Defendants collected, disclosed, or used her child's personal information because Defendants at all times failed to provide Plaintiff any of the required disclosures, never sought verifiable parental consent, and never provided a mechanism by which Plaintiff could provide verifiable consent.

## VII.   PLAINTIFF SPECIFIC ALLEGATIONS

47.   In the spring of 2018, B.M. downloaded the Musical.ly App onto her iPad and her iPhone 6.  At this time, B.M. was 10 years old.  B.M.'s mother was unaware that her daughter had downloaded the app.

48.   Thereafter, B.M. used the Musical.ly App on a daily basis, both for viewing videos as well as creating and posting videos of her own.

49.   During the process of registering for the Musical.ly App, B.M. was required to provide her email address, phone number, username, first and last name, a short biography, and a profile picture.

50.   Defendants never asked Ms. Scott for her verifiable parental consent – in any form or at any time – to collect, disclose, or use B.M.'s personal information, as required by COPPA.

51.   Defendants never provided direct notice – as required by COPPA – to Ms. Scott regarding Defendants' practices with regard to collecting, using and disclosing B.M.'s personal information, or regarding the rights of Ms. Scott or B.M. under COPPA.

52.   When the Musical.ly app merged with the TikTok app in August 2018, the B.M.'s Musical.ly account automatically became a TikTok account. Defendants never asked Ms. Scott for her verifiable parental consent – in any

CLASS ACTION COMPLAINT

form or at any time – to retain or use B.M.'s personal information.  Nor did Defendants provide direct notice to Ms. Scott regarding Defendants' practices with regard to retaining, using, and disclosing B.M.'s personal information, or regarding the rights of Ms. Scott or B.M. under COPPA.

53.     As a result of Defendants' conduct, B.M.'s personal information was published to, and searchable by, other users of the App.  This resulted in B.M. being contacted by older users of the App, including older men, and connecting with them through the App.

54.     When Ms. Scott discovered that the App had made it possible for older users to connect with her child, she became alarmed and demanded that her daughter delete her TikTok account.

55.     Defendants' collecting and publishing of B.M.'s personal information without her verifiable consent is highly offensive to Ms. Scott and constitutes an invasion of her child's privacy and of Ms. Scott's right to protect her child from this invasion.

**VII.   CLASS ALLEGATIONS**

56.     Plaintiff brings this lawsuit on behalf of herself and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). The proposed Multi-State Class is defined as follows:

>    All persons residing in the States of Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of 13, or were younger than the age of 13 when they used the Musical.ly App and/or the successor TikTok App, and their parents and/or legal guardians,

CLASS ACTION COMPLAINT

from whom Defendants collected, used, or disclosed personal information without verifiable parental consent.

57.     Plaintiff reserves the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

58.     Excluded from the Classare: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants, predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and the Multi-State Class and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

59.     *Numerosity*: The members of the Class are so numerous that joinder of all members is impracticable.  The exact number of Class members, as herein identified and described, is not known, but install figures indicate that the App has been installedmore than 96 million times in the United States and more than 1billion times worldwide.

60.     *Predominance:*Common questions of law and fact exist as to all members of the Class.  These questions predominate over questions affecting individual members of the Class and include:

> a.   Whether Defendants collected and disclosed information on youth users as described herein;

> b.   Whether Defendants provided disclosure of all the activities referenced herein on a website as required by COPPA;

> c.   Whether Defendants directly notified parents of any of the

CLASS ACTION COMPLAINT

activities referenced herein;

d.  Whether Defendants sought verifiable parental consent prior to engaging in any of the activities described herein;

e.  Whether Defendants provided a process or mechanism for parents to provide verifiable parental consent prior to engaging in any of the activities described herein;

f.  Whether Defendants received verifiable parental consent prior to engaging in any of the activities referenced herein.

g.  Whether Defendants' acts and practices complained of herein violate COPPA;

h.  Whether Defendants' acts and practices complained of herein amount to acts of intrusion upon seclusion under the law of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia;

i.  What is the appropriate injunctive relief to ensure Defendants no longer illegally collect and publish children's personal information.

CLASS ACTION COMPLAINT

16

61.   *Typicality*: Plaintiff's claims are typical of the claims of the members of the proposed Class, as all such claims arise out of Defendants' conduct in collecting, publishing and/or selling the personal information of the Class members.  All of Plaintiff's claims are typical of the claims of the Class since Plaintiff and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiff and all Class members have the same claims against defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members.    Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

62.   *Adequacy*:  Plaintiff will fairly and adequately protect the interests of the members of the proposed Class and has no interests antagonistic to those of the Class.  Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving data privacy.

63.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the proposed Class is impracticable.  Should individual Class members be required to bring separate actions, this court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent rulings will magnify the delay and expense of all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

64.   *Final Declaratory or Injunctive Relief*.  Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has

CLASS ACTION COMPLAINT

acted or refused to act on grounds that generally apply to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

65.   *Particular Issues*.  Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4).  Their claims consist of particular issues that are common to all proposed Class members and are capable of class-wide resolution that will significantly advance the litigation.

## FIRST CAUSE OF ACTION

### Intrusion Upon Seclusion

### (Brought on Behalf of the Multi-State Class)

66.   Plaintiff repeats and realleges all preceding paragraphs contained herein.

67.   Plaintiff and the Multi-StateClass members have reasonable expectations of privacy in their use of mobile phones and online activity. Additionally, Plaintiff and the Multi-State Classmembers have a reasonable expectation that children's information will not be improperly collected and published or utilized without parental notification and consent. Plaintiff and the Multi-State Class members expect that children's online behavior and private affairs will remain private and free of intrusion. The private affairs and concerns of children under the age of 13 include their personal and contact information that can be improperly collected and used without parental consent.

68.   The reasonableness of such expectations of privacy is supported by the extent to which children under the age of 13 are protected against the illegal collection and dissemination of their personal information conducted by Defendants. Moreover, Defendants are in a unique position where they can determine whether they have collected private information from children. Despite knowing that they had collected the private information of children under the age of 13, Defendants failed to act as required by the COPPA.

CLASS ACTION COMPLAINT

69.     Defendants intruded on and into Plaintiff's and Multi-StateClass members' solitude, seclusion, or private affairs by operating an online service that is directed to children and collecting the email addresses, phone numbers, names, and other personal information of the child Plaintiffs.

70.     Defendants' intrusions upon children's online behavior are highly offensive to an ordinary reasonable person. This position is supported by the FTC's recent enforcement actions and legislation described above.Moreover, on information and belief,  the nature of Defendant's privacy invasion involves the sharing of Plaintiff's and the Multi-State Class members'personal information with third parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

71.     Plaintiff and Multi-StateClass members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

72.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Multi-State Class members.

73.     As a result of Defendants' actions, Plaintiff and Multi-StateClass members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of COPPA, and destruction of all personal data obtained in violation of COPPA.

74.     As a result of Defendants' actions, Plaintiff and theMulti-StateClass members seek nominal and punitive damages in an amount to be determined at trial. Plaintiff and Multi-StateClass members seek punitive damages because Defendants' actions – which were malicious, oppressive, willful – were calculated to injure Plaintiff and Multi-State Class members and made in conscious disregard of their rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

CLASS ACTION COMPLAINT

# **RELIEF SOUGHT**

**WHEREFORE**, Plaintiff prays for judgment as follows:

75.     That the Court certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiffs' counsel to represent the Class;

76.     That the Court Find that the Defendants' actions, constitute: (i) violations of the common law claim of intrusion upon seclusion in the states of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia.

77.     A declaratory judgment that Defendants' actions of collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent violate COPPA;

78.     An order permanently enjoining Defendants from collecting, using, or disclosing personal information of child users without first obtaining verifiable parental consent;

79.     That the Court award Plaintiff and Class members appropriate relief, including actual and statutory damages and punitive damages, in an amount to be determined at trial;

80.     That the Court award equitable, injunctive, and declaratory relief as may be appropriate;

81.     For reasonable attorneys' fees according to proof pursuant to applicable law;

82.     For costs of suit incurred; and

83.     For such further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiff and the Class Members hereby demand trial by jury of all issues triable as of right by jury.

Dated:  August 6, 2019                       s/ Behram V. Parekh

**KIRTLAND AND PACKARD LLP**
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
2041 Rosecrans Ave., Third Floor
El Segundo, California 90245
Telephone: (310) 536-1000
Facsimile: (310) 536-1001

**MIGLIACCIO & RATHOD LLP**

Nicholas Migliaccio, *pro hac vice anticipated*
Jason Rathod, *pro hac vice anticipated*
Esfand Nafisi (State Bar No. 320119)
412 H Street NE, Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Email: enafisi@classlawdc.com
Email: nmigliaccio@classlawdc.com
Email: jrathod@classlawdc.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT

21